## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CREATIVE COPIER SERVICES, | ) |
| | ) |
| Plaintiff, | ) Civil Action |
| | ) No. 01-CV-155 (SRU) |
| v. | ) |
| | ) **Reply Memorandum in Support of Xerox's** |
| XEROX CORPORATION, | ) **Motion to Dismiss CCS's Third Amended** |
| | ) **Complaint** |
| Defendant. | ) |
| | ) July 6, 2004 |

## REPLY IN SUPPORT OF XEROX'S MOTION TO DISMISS
## CCS'S THIRD AMENDED COMPLAINT

Peter K. Bleakley
Jonathan I. Gleklen
Christopher F. Winters
Jon J. Nathan
ARNOLD & PORTER
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000
fax: (202)-942-5999
email: jonathan_gleklen@aporter.com

Robert P. Dolian (ct04278)
CUMMINGS & LOCKWOOD LLC
Four Stamford Plaza, 107 Elm Street
Stamford, Connecticut 06902
(203) 351-4307
fax: (203) 708-3948
email: rdolian@cl-law.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

INTRODUCTION AND SUMMARY ........................................................................... 1

ARGUMENT ................................................................................................................ 1

I.   CCS FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE
     GRANTED UNDER SECTION 2 OF THE SHERMAN ACT. ........................... 1

     A.   CCS Has Failed To Allege Proper Antitrust Relevant Markets. ............................ 1

     B.   CCS Fails To Allege That Xerox Engaged In Actionable
          Anticompetitive Conduct. ........................................................................................ 3

          1.   Xerox's Refusal To Assist CCS Was Not Anticompetitive Because Xerox
               Did Not Sacrifice Short-Term Profits. ......................................................... 3

          2.   Xerox Can Properly Assert That CCS Has No Right To Free Ride On
               Xerox's Investment In Parts Inventory In Its Motion To Dismiss .............. 5

          3.   CCS's Allegation That Xerox Allegedly Misrepresented Used Copiers
               As New Fails To Allege Antitrust Injury ..................................................... 6

          4.   CCS's Below Cost Pricing Claim ................................................................. 7

          5.   It Is Not Unlawful For Xerox To Charge For Diagnostic Software. .......... 9

          6.   Xerox's Alleged "Manipulation" Of The Lease Buy-Out Amounts
               Would Be A Contract Claim, Not An Antitrust Claim. ............................ 10

          7.   Xerox's Alleged Violation of the *R&D* Settlement Agreement Does
               Not Violate The Antitrust Laws ................................................................. 12

II.  CCS FAILS TO STATE A DEFAMATION CLAIM AS A MATTER OF
     CONNECTICUT STATE LAW. ....................................................................... 12

III. CCS'S REVISED AND EXPANDED TORTIOUS INTERFERENCE
     CLAIM FAILS TO STATE A COGNIZABLE CLAIM UNDER
     CONNECTICUT LAW ...................................................................................... 15

     A.   The "Law Of The Case" Doctrine Does Not Apply To CCS's New
          And Expanded Tortious Interference Claim .......................................................... 15

     B.   CCS's Tortious Interference Claim Fails As A Matter Of Law
          Because CCS's Own Allegations Defeat Such A Claim ....................................... 16

       C.     The October 2001 Stipulation Did Not Waive Xerox's Right To
Move To Dismiss CCS's Tortious Interference Claim...........................................17

IV.     CCS'S CUTPA CLAIM FAILS AS A MATTER OF LAW.............................................18

V.     CCS'S ALLEGATIONS DEMONSTRATE THAT IT HAS NO
STANDING TO BRING A LANHAM ACT CLAIM ......................................................19

CONCLUSION.............................................................................................................................20

## INTRODUCTION AND SUMMARY

Xerox Corporation ("Xerox") showed in its Motion to Dismiss that Plaintiff-Counterdefendant Creative Copier Services' ("CCS") reformulated claims are defective on their face and that CCS cannot plead or prove any viable antitrust claim against Xerox. In its Opposition CCS does little more than point blindly to the Supreme Court's *Kodak* decision, *Eastman Kodak Co. v. Image Technical Services,* 504 U.S. 541 (1992), a tying case that involved a limited market definition issue, without recognizing the narrow scope of the Court's holding and without addressing the numerous circuit court decisions that have followed and interpreted *Kodak*. As such, CCS essentially fails to respond to the merits of Xerox's arguments, and fails to provide any basis for denying Xerox's Motion to Dismiss its antitrust claim.

CCS similarly fails to engage Xerox's arguments on its other claims. CCS argues that the "law of the case" prevents Xerox from moving to dismiss CCS's defamation and tortious interference claims, even though it is plain that CCS's Third Amended Complaint asserts different claims than those before Judge Vratil in the District of Kansas. Accordingly, as discussed in Xerox's Motion and below, those claims must be dismissed. CCS's Opposition similarly quibbles with Xerox's motion to dismiss CCS's Connecticut Unfair Trade Practices Act and Lanham Act claims but provides no substantive reason to deny Xerox's motion on those claims.

## ARGUMENT

**I.    CCS FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER SECTION 2 OF THE SHERMAN ACT**

**A.    CCS Has Failed To Allege Proper Antitrust Relevant Markets**

Xerox established in its Motion to Dismiss that CCS failed to adequately allege a relevant product market. *See* Xerox Memorandum in Support of its Motion to Dismiss ("Xerox Mem.").

at 4-10. CCS's only response to Xerox's contention is that its market definition is proper because the Supreme Court affirmed the reversal of a grant of summary judgment in an aftermarket case in *Eastman Kodak Co. v. Image Technical Services*, 504 U.S. 451 (1992). *See* CCS Opposition to Xerox's Motion ("Opposition") at 6-8. *Kodak* cannot support CCS's claims.

The only market definition question in *Kodak*, raised only in a footnote in Kodak's brief, was whether parts and service were separate markets for purposes of a tying claim. 504 U.S. at 463. The Court was not asked to, and did not, address questions of demand and supply substitution, and certainly did not address the question of whether a relevant market was adequately pled in a plaintiff's complaint. Rather, as post-*Kodak* cases have shown, CCS, like all antitrust plaintiffs, must allege a proper market definition that provides a "theoretically rational explanation" for its proposed market from the perspective of both demand and supply side substitutability. *See Todd v. Exxon Corp.*, 275 F. 3d 191, 199-200 (2d Cir. 2001)("[Antitrust] cases in which dismissal on the pleadings is appropriate frequently involve either 1) failed attempts to limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes or 2) failure even to attempt a plausible explanation as to why a market should be limited in a particular way."); *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 85 (2d Cir. 2000)(rejecting plaintiff's market definition because it ignored potential substitutes); *Subsolutions, Inc. v. Doctor's Assocs.*, 62 F. Supp. 2d 616, 624 (D. Conn. 1999)(dismissing antitrust claim because the plaintiff "fail[ed] to define its proposed relevant market with reference to the rule of reason interchangeability and cross-elasticity of demand."). CCS fails even to address the questions of supply and demand substitutability to which *Todd*, *Hack*, and *Subsolutions* demand an answer.

CCS attempts to overcome these defects by contending that its flawed market definition survives under the general rule stated in *George C. Frey v. Readi-Mix Concrete Co. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553-54 (2d Cir. 1977), that antitrust claims need not be pled with particularity. But *Frey* does not excuse antitrust plaintiffs from alleging facts that would, if true, support a plausible relevant market. Moreover, since the *Frey* decision, the Second Circuit and district courts in this Circuit have expressly required antitrust plaintiffs to allege facts supporting a plausible market in order to survive a motion to dismiss. *See*, *e.g.*, *Todd,* 275 F. 3d at 199-200; *Commercial Data Servers, Inc. v. IBM Corp.*, 166 F. Supp. 2d 891, 897 (S.D.N.Y. 2001)(dismissing plaintiff's complaint because its market definition limited to "mainframes compatible with IBM's licensed" operating system failed to allege any specific facts explaining why the market excluded other operating systems); *Mathias v. Daily News*, 152 F. Supp. 2d 465, 481-83 (S.D.N.Y. 2001)(dismissing complaint because plaintiff failed to reference the rule of reasonable interchangeability); *Smith & Johnson, Inc. v. Hedaya Home Fashions Inc.*, No. 96 CIV. 5821, 1996 WL 737194, at *6 (S.D.N.Y. Dec. 26, 1996)(a plaintiff "must present specific and concrete factual allegations which, if proved, would demonstrate that the [proposed market] is truly unique and separate from the market for similar goods.").

CCS does not and cannot contest that Xerox cannot be guilty of monopolization absent a properly defined relevant market. *See Hack*, 237 F.3d 81, 85 ("[W]hen we speak of monopolization or attempted monopolization, we necessarily are talking about monopoly power within a relevant market."). Accordingly, CCS's antitrust claim should be dismissed.

**B.    CCS Fails To Allege That Xerox Engaged In Actionable Anticompetitive Conduct**

    **1.    Xerox's Refusal To Assist CCS Was Not Anticompetitive Because Xerox Did Not Sacrifice Short-Term Profits**

CCS again relies almost entirely upon *Kodak*, a tying case, and ignores more recent Supreme Court precedent (*Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko*, --- U.S. ---, 124 S. Ct. 872 (2004)) on the proper antitrust treatment of unilateral refusals to deal to argue in vain that it has stated an antitrust claim. CCS posits that because the Supreme Court in *Kodak* held that Kodak's behavior could constitute anticompetitive conduct and *Kodak* was not expressly overruled in *Trinko*, then Xerox's behavior must also be deemed anticompetitive. Opposition at 10-12. However, CCS fails to disclose that *Kodak* involved allegations of *tying*, while CSC alleges that Xerox engaged in a unilateral refusal to deal when it declined to sell parts. *See Kodak*, 504 U.S. at 463 n.8 (rejecting Kodak's contention that its behavior constitutes a unilateral refusal to deal because Kodak conditioned its sale of parts on purchasing service from Kodak). Because CCS's allegations relate to Xerox's unilateral refusal to deal with a competitor, the Supreme Court's holding in *Trinko*, not *Kodak*, provides the appropriate standard for evaluating the legal adequacy of CCS's claim.

As Xerox established in its Motion to Dismiss, *Trinko* holds that Xerox's unilateral refusal to assist CCS constitutes anticompetitive conduct only if Xerox sacrificed short-term profits by refusing to sell CCS parts in order to reap monopoly profits after foreclosing competition. 124 S. Ct. at 880. CCS does not make (nor could it make) such allegations in this case. Moreover, despite CCS's representations to the contrary, termination of a prior course of dealing does not itself render conduct anticompetitive under *Trinko* absent proof (or, in the case of a motion to dismiss, an allegation) that the changed policy involves the sacrifice of short-term profits. As the Court stated in *Trinko*, "*Aspen Skiing* [a case involving termination of a prior course of dealing] is at or near the outer boundary of § 2 liability" and liability existed only because the evidence "suggested a willingness to forsake short-term profits to achieve an

4

anticompetitive end." *Id.* The Court's decision in *Trinko* was in no way dependent upon the absence of a prior course of dealing, and the case cannot fairly be read to stand for that proposition. *See id.* Even if Xerox has previously supplied CCS with replacement parts for use in providing third party service, Xerox's alleged policy change can constitute anticompetitive conduct only if it sacrificed short-term profits when it stopped selling parts. Accordingly, because the Third Amended Complaint lacks any such allegations, CCS fails to state a claim for a unilateral refusal to deal.

### 2. Xerox Can Properly Assert That CCS Has No Right To Free Ride On Xerox's Investment In Parts Inventory In Its Motion To Dismiss

CCS argues that Xerox has improperly raised the defense that CCS "could not 'free ride' on Xerox's parts inventory because it is an affirmative defense that is improper to raise on a motion to dismiss." Opposition at 12. However, Xerox's "free riding" argument does not raise an affirmative defense, but rather simply points the Court to the fact that, based on CCS's own allegations, CCS's antitrust and tortious interference claims are not cognizable at law. CCS was the master of the allegations of its Third Amended Complaint, and was constrained only by the strictures of Fed. R. Civ. P. 11 in making those allegations. It was CCS, not Xerox, that made the factual allegations that CCS required overnight delivery for replacement parts from Xerox in order to maintain its "uptime requirements" for customers, a factual allegation that placed the *Abcor* decision, *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 926 (4th Cir. 1990), on all fours with its claim. That CCS pled a claim that, on its face, is insufficient as a matter of law is a proper grounds for dismissal pursuant to Rule 12(b)(6).

Furthermore, CCS cites no precedent for the proposition that Xerox's free rider argument cannot be raised in a motion to dismiss, and the treatise it cites in support of its contention in fact

recognizes the *opposite* proposition.  *See* Wright and Miller, 5A *Fed. Prac. & Proc. Civ.2d* §
1357 ("The complaint also is subject to dismissal under Rule 12(b)(6) when its allegations
indicate the existence of an affirmative defense…"); *see also Official Committee of the
Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir.
2003)("[A] complaint can be dismissed for failure to state a claim pursuant to a 12(b)(6) motion
raising an affirmative defense if the defense appears on the face of the complaint").  Thus, this
Court may properly consider Xerox's argument that CCS wanted to free-ride on its parts
inventory at this stage of the proceeding and, accordingly, dismiss CCS's claim.

       **3.**      **CCS's Allegation That Xerox Allegedly Misrepresented Used Copiers
As New Fails To Allege Antitrust Injury**

      CCS's allegation that Xerox's actions foreclosed its entry into service contracts for the
machines it sought to lease to its customers, even if true, fails to state an actionable antitrust
claim because CCS alleges harm only to itself.  As Xerox has shown in its Motion to Dismiss, a
successful antitrust claim requires allegations of an injury to overall competition, rather than just
to the individual competitor.  *See, e.g.*, *George Haug Co. v. Rolls Royce Motor Cars, Inc.*, 148
F.3d 136, 139 (2d Cir. 1998).  CCS cites no case in which alleged misrepresentation was
condemned as an antitrust violation, and does not explain how CCS's inability to service a few
copiers could have resulted in the harm to competition required to state an antitrust claim.  As the
Supreme Court has recognized, "[e]ven an act of pure malice by one business competitor against
another does not, without more, state a claim under the federal antitrust laws; those laws do not
create a federal law of unfair competition or purport to afford remedies for all torts committed by
or against persons engaged in interstate commerce."  *Brooke Group Ltd. v. Brown & Williamson
Tobacco Corp.*, 509 U.S. 209, 225 (1993) (internal quotation and citation omitted).  As CCS has

alleged only harm to itself from its potentially lost contract resulting from Xerox's alleged misrepresentation, these allegations cannot support an antitrust claim.

4.    **CCS's Does Not Allege the Necessary Elements Of A Below Cost Pricing Claim**

In its Motion to Dismiss, Xerox has demonstrated that CCS has failed to state a below cost pricing claim. *See* Xerox Mem. at 15-17. Yet again, CCS's response is to fall back on *Frey* in an effort to excuse itself from having to allege the necessary elements of the cause of action. *See* Opposition at 14.[1] But *Frey* does not excuse CCS from pleading the required elements of a predatory pricing claim – pricing below an appropriate measure of cost and a likelihood of recoupment. *See generally Brooke Group*, 509 U.S. at 222-26 (stating elements of a predatory pricing claim). These elements must be pled to survive a motion to dismiss. *See Mathias.*, 152 F. Supp. 2d at 473 (dismissing complaint where plaintiffs "failed to allege facts tending to demonstrate that the Daily News had any reasonable prospect of recouping costs"); *Naso v. Park*, 850 F. Supp. 264, 271 (S.D.N.Y. 1994) (dismissing predatory pricing claim because "[t]o state a claim for predatory pricing, plaintiffs must allege that defendants' prices are below an appropriate measure of their costs."); *Volmar Distribs., Inc. v. New York Post Co., Inc.*, 825 F. Supp. 1153, 1160 (S.D.N.Y. 1993) (dismissing complaint because "to state a claim for predatory pricing, plaintiffs must include allegations of the relation between a competitor's prices and its marginal costs and not merely allegations that they were adversely affected by such prices.").

---

[1] CCS attempts to undermine Xerox's argument by suggesting that the definition of below cost pricing is in flux. *See* Opposition at 16. However, the Second Circuit steadfastly reaffirmed the use of the below cost pricing formula articulated in *Kelco Disposal* in *Irvin Indus. v. Goodyear Aerospace Corp.*, 974 F.2d 241, 245 (2d Cir. 1992). *See also Virgin Atlantic Airways Ltd. v. British Airways, PLC*, 257 F.3d 256, 265-67 (2d Cir. 2001); *Aso v. Park*, 850 F. Supp. 264, 271-72 (S.D.N.Y. 1994).

With regard to the first element, pricing below an appropriate measure of cost, CCS's obfuscation in its Opposition cannot obscure the fact that it simply has not alleged that Xerox priced below its "reasonably anticipated marginal cost, and its surrogate, reasonably anticipated variable cost." *Kelco Disposal, Inc. v. Browning-Ferris Indus. of Vermont, Inc.*, 845 F.2d 404, 407 (2d Cir. 1988). With regard to the second element, a likelihood of recoupment, CCS claims only that "the allegations that suffuse the third amended complaint support an inference that once Xerox eliminated CCS's competition at Aetna, it would have the business for itself." Opposition at 16. But winning business as a result of predatory pricing is not the same as the recoupment required to state a predatory pricing claim – which requires that the monopolist have the ability to raise its prices after foreclosing competitors to make up for profits foregone during the period of predatory pricing. *See Rebel Oil, Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433-34 (9th Cir. 1995). As the Fifth Circuit has pointed out, monopolists often are unable to recoup their costs through increased prices, thus bestowing a gift on consumers as a result of the below-cost pricing. *See, e.g., Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 530 (5th Cir. 1999). Accordingly, CCS's below cost pricing claim must be dismissed.

### 5.     It Is Not Unlawful For Xerox To Charge For Diagnostic Software

CCS is unable to cite any case in which antitrust liability was imposed because the owner of intellectual property charged its competitors for the right to use that property rather than giving it away for free.  There is of course no such case.

Instead, CCS again futilely claims that *Kodak* somehow stands for the proposition that Xerox cannot charge a license fee for its diagnostic software.  *See* Opposition at 17.  In so doing, CCS ignores the fact that *Kodak* says nothing about charging for intellectual property, or even about unilateral refusals to deal, but only condemns tying arrangements.  As the Federal Circuit observed:

> Notably, *Kodak* was a tying case when it came before the Supreme Court, and no patents had been asserted in defense of the antitrust claims against Kodak.  Conversely, there are no claims in this case of illegally tying the sale of Xerox's patented parts to unpatented products.  Therefore, the issue was not resolved by the *Kodak* language cited by [plaintiff].

*In re Indep. Serv. Orgs. Antitrust Litig.*, 203 F. 3d 1322, 1327 (Fed. Cir. 2000).

The law is clear in this Circuit as well that Xerox has no obligation to sell or license its intellectual property.  *See SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1209 (2d Cir. 1981). Because Xerox need not sell or license its intellectual property *at all*, it is not unlawful to charge for it, no matter how high the price.  *See In re Indep. Serv. Orgs. Antitrust Litig.*, 964 F. Supp. 1479, 1490 (D. Kan. 1997) ("Thus if Xerox could lawfully refuse to sell its patented parts, it could certainly price its parts at a price as high as it sees fit."); *In re Indep. Serv. Orgs. Antitrust Litig.*, 910 F. Supp. 1537, 1542 (D. Kan. 1995)("ownership of intellectual property 'entitles the owner to extract royalties as high as he can negotiate with the leverage of that monopoly.'" (quoting *Brulotte v. Thys Co.*, 379 U.S. 29, 33 (1964)).  Indeed, because Xerox's "monopoly"

over its diagnostic software is a lawful one, it can charge whatever it wishes regardless of whether or not its diagnostic software is protected by intellectual property rights. "The mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system." *Trinko*, 124 S. Ct. at 879.

### 6.    Xerox's Alleged "Manipulation" Of The Lease Buy-Out Amounts Would Be A Contract Claim, Not An Antitrust Claim

In its Motion to Dismiss, Xerox demonstrated that its alleged breach of a contract with Aetna cannot provide the source for antitrust liability. *See, e.g., Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 527 (1983)(defendant's alleged breach of contract "plainly not subject to review under the federal antitrust laws"); IIIA Phillip E. Areeda and Herbert Hovenkamp, *Antitrust Law*, ¶ 782m ("courts consistently reject antitrust claims that are in fact breach of contract or claims that one party's interpretation of or performance under its contract violates the antitrust laws."). CCS does not actually cite any case in which a mere breach of contract has been held to violate the antitrust laws and instead resorts to mischaracterizing Xerox's arguments. *See* Opposition at 18-19.

By allegedly "manipulating" the buyout price of its lease, Xerox allegedly charged Aetna more to buy copiers than it had agreed to pay. But charging a high price is not an antitrust violation. *Trinko*, 124 S. Ct. at 879; *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 294 (2d Cir. 1979) ("[s]etting a high price may be a use of monopoly power, but it is not in itself anticompetitive."); *In re Indep. Servs. Orgs. Antitrust Litig.*, 910 F. Supp. at 1543 ("we are not aware of any court that has held that price alone is a basis for antitrust liability"). A breach of contract cannot convert the otherwise lawful act of charging a high price into an antitrust violation, for a contract obligates the promisor to perform or to pay damages for breach; it does

not create duties enforceable under the antitrust laws. *See 2660 Woodley Road Joint Venture v. ITT Sheraton Corp.*, 369 F.3d 732, 738-739 (3rd Cir. 2004) (rejecting antitrust claim where the plaintiff's "injury was caused by a breach of contract" because "we do not think that paying inflated purchasing prices to vendors, without more, is an injury of the type the antitrust laws were intended to prevent") (internal citation and quotation omitted); *Verizon New Jersey, Inc. v. Ntegrity Telecontent Services, Inc.*, 219 F. Supp. 2d 616, 630 (D.N.J. 2002) (dismissing antitrust claim where plaintiff alleged that defendant had not performed under contract "but does not allege behavior that would otherwise constitute an antitrust violation.").[2]

CCS seeks to rescue its antitrust claims by citing *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962), for the proposition that the Court must "view the conduct not in isolation, but as part of a pattern of anti-competitive conduct." Opposition at 19. But *Continental Ore* does not allow a plaintiff to make out an antitrust case by aggregating a series of independently lawful acts; the Second Circuit has made plain that individual actions that are not anticompetitive cannot give rise to antitrust liability regardless of the larger context in which they are considered. *See City of Groton v. Connecticut Light & Power Co.*, 662 F.2d 921, 928-9 (2d Cir. 1981) ("Even though many of the issues the [plaintiffs] raise are interrelated and interdependent, however, we must, like the [plaintiffs'] briefs, analyze the various issues individually. Moreover we reject the notion that if there is a fraction of validity to each of the basic claims and the sum of the fractions is one or more, the plaintiffs have proved a violation of the section 1 or section 2 of the Sherman Act."); *Northeastern Tel. Co. v. American Tel. & Tel.*

---

[2] Indeed, the concept of "efficient breach" recognizes that there are some "breaches of contract that are in fact efficient and wealth-enhancing [and] should be encouraged." *Thyssen, Inc. v. S.S. Fortune Star*, 777 F.2d 57, 63 (2d Cir. 1985).

*Co.*, 651 F.2d 76, 95 n.28 (2d Cir. 1981)(stating that when plaintiff's evidence is lacking, treating a plaintiff's claims collectively in accordance with *Continental Ore* cannot have any synergistic effect); *see also Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1367 (Fed. Cir. 1999).

### 7.    Xerox's Alleged Violation of the *R&D* Settlement Agreement Does Not Violate The Antitrust Laws

The CCS claims that are based on Xerox's alleged violation of the *R&D* settlement agreement by charging prices higher than those allowed under the settlement fail for the same reason. Xerox's high prices for parts are neither anticompetitive nor unlawful under the antitrust laws. *Supra* at 10-11. If Xerox breached the R&D settlement agreement (and if CCS is a party to that settlement, a fact that it does not allege), CCS's remedy lies in a breach of contract action in the Eastern District of Texas (where the settlement requires all disputes to be resolved), not a case under the antitrust laws.

## II.    CCS FAILS TO STATE A DEFAMATION CLAIM AS A MATTER OF CONNECTICUT STATE LAW

As demonstrated in Xerox's Motion, CCS's defamation claim (Count III of the Third Amended Complaint), does not contain sufficient allegations to support relief under Connecticut law. The defamation claim fails because CCS does not specifically allege the disparaging statements, who made them, who heard them, when they were made, and the context in which they were made. *See Thomas v. Saint Francis Hosp. & Med. Ctr.*, 990 F. Supp. 81, 92 (D. Conn. 1998); *Croslan v. Housing Auth.*, 974 F. Supp. 161, 169-70 (D. Conn. 1997); *see also Pro Performance Corporate Servs., Inc. v. Goldman*, No. CIV.A.01-0186618, 2003 WL 22133945, at *2 (Conn. Super. Ct. Aug. 25, 2003). Connecticut courts – as well as this Court – routinely dismiss defamation claims that fail to make such specific allegations. *Kloth v. Citibank (South*

*Dakota), N.A.,* 33 F. Supp. 2d 115, 121 (D. Conn. 1999); *2500 SS Ltd. P'ship v. White*,

No.328934, 1996 WL 493188 (Conn. Super. Ct. Aug. 19, 1996)

CCS's only response is its argument that Judge Vratil's decision on summary judgment is

the "law of the case" and therefore CCS's facially defective defamation claim should go to trial.

In making that argument, however, CCS asks the Court to ignore the fact that its substantive

defamation allegations have changed dramatically from those before Judge Vratil, who held that

Xerox did not brief the question of whether it had defamed CCS by allegedly telling Aetna that

CCS's technicians were untrained.  *In re Serv. Orgs. Antitrust Litig.*, 114 F. Supp. 2d 1070, 1079

(D. Kan. 2000).  Xerox's failure to brief the issue is unsurprising because CCS's First Amended

Complaint (in effect at the time of Judge Vratil's ruling) did not actually *allege* such defamation,

claiming only:

> 64    Xerox repeatedly represented to end user that they should
> not employ the services of ISOs because the ISOs cannot obtain
> Xerox parts.  Xerox also has stated or implied to these customers
> and potential customers that, if ISOs have obtained these parts,
> they are thieves.
>
> 65    Xerox agents and employees also disparaged CCS by
> telling its customers and potential customers that CCS was not
> competent or honest in its business, and that CCS had been
> awarded contracts solely because it is a minority owned business.
>
> 66    Despite its decision to sell parts to ISOs, beginning in the
> summer of 1994, Xerox continued to disparage ISOs in general,
> and CCS, in particular, as to parts and resources issues.  In 1995,
> Xerox even asked end users to question whether ISO competitors
> can remain in business to service their equipment.

First Amended Complaint (Ex. 1 to Xerox Motion).

It would be inappropriate to deem the "law of the case" an issue that was not even

briefed.  *See, e.g.*, *Damach, Inc. v. City of Hartford*, 139 F. Supp. 2d 268, 270 (D. Conn. 2001)

(holding that an issue not fully litigated could not be subject to law of the case doctrine); *see generally* 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 4478 at 664-67 (2002) (same).

But even if Judge Vratil's decision on CCS's prior defamation claim were the law of the case, the Court has ample reason to reject that ruling on the grounds that Judge Vratil misapprehended Connecticut law and committed clear error. A court may reconsider a prior ruling that is the law of the case if there is a "need to correct a clear error or prevent a manifest injustice." *Virgin Atl. Airways v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). As cited in Xerox's Motion and above, Connecticut law is crystal clear that defamation allegations must be supported by specific facts as to (among other things) the speaker of the alleged defamatory statement, the time the statement was made, and the context in which the statement was made. *See* Xerox Mem. at 21-22 (citing cases). CCS has not made those specific allegations. Thus, allowing CCS's vague and non-specific defamation claim to proceed would be a waste of judicial resources; the Court would be required to enter a directed verdict against CCS on that claim based on CCS's lack of proof.[3]

---

[3] Citing to evidence outside the Complaint, CCS spuriously argues that Xerox knows the basis of CCS's defamation claim and that DeRon Franklin testified that "Xerox finance people" made the disparaging comments. However, Xerox does not make this Motion to trip up CCS on a procedural hurdle of Connecticut law that could be cured by an amendment. Instead, it is the case that CCS could not, consistent with Fed. R. Civ. P. 11, allege the specific facts necessary to support a defamation claim under Connecticut law. Mr. Franklin testified that he could not remember which Xerox employee made the allegedly defamatory remark, what the Xerox representatives specifically said or when they said it. Thus, CCS asks the Court to engage in an act of futility; CCS's lone witness has admitted that he cannot provide the evidentiary basis for a defamation claim against Xerox.

**III.    CCS'S REVISED AND EXPANDED TORTIOUS INTERFERENCE CLAIM
FAILS TO STATE A COGNIZABLE CLAIM UNDER CONNECTICUT LAW**

   **A.    The "Law Of The Case" Doctrine Does Not Apply To CCS's New And
   Expanded Tortious Interference Claim**

As with CCS's defamation claim, CCS's central argument is that Xerox's Motion to
Dismiss its tortious interference claim is barred by Judge Vratil's summary judgment ruling on
the previous incarnation of CCS's tortious interference claim.  But CCS's Third Amended
Complaint asserts a quite different tortious interference claim, again rendering the "law of the
case" doctrine inapplicable.

CCS concedes that "[a]s originally pled . . . [the tortious interference claim] referred to
interference with only one of CCS's customer[s], the State of Connecticut."  But CCS's original
tortious interference claim involved not only a different contract, but different *conduct*.  In the
Amended Complaint before Judge Vratil, CCS alleged only that:

   Xerox representatives have successfully encouraged and enticed
   employees in the various agencies and departments of the State of
   Connecticut to contract with Xerox in breach of CCS' contract
   with the State of Connecticut.

*See* Xerox Motion at Ex. 1, ¶ 101.  Thus understood, CCS's tortious interference claim, as pled
and as before Judge Vratil on summary judgment, related to Xerox's conduct directed at the
*employees of the State of Connecticut,* not at CCS.

CCS's new allegations of tortious interference are wholly different from those before
Judge Vratil and are thus subject to Xerox's Motion to Dismiss.  In its new allegations, CCS
claims that Xerox's alleged policy of "denying and delaying parts" *to CCS* constitutes tortious
interference.  Gone are the allegations of "encouragement and enticement" of State of
Connecticut employees to breach a contract with CCS.  Instead, the allegations relate to only to
conduct between Xerox and CCS, not third parties.  Because no such claims were found in the

Amended Complaint before Judge Vratil, Xerox did not even brief them in its motion for summary judgment. 114 F. Supp. 2d at 1081. Judge Vratil's decision thus cannot be considered the "law of the case." *See, e.g.*, *Damach, Inc. v. City of Hartford*, 139 F. Supp. 2d 268, 270 (D. Conn. 2001) (holding that issue not fully litigated could not be subject to law of the case doctrine); *see generally* 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 4478 at 664-67 (2002) (same).[4]

### B. CCS's Tortious Interference Claim Fails As A Matter Of Law Because CCS's Own Allegations Defeat Such A Claim

CCS's Opposition is notable for its failure to address the substance of Xerox's Motion concerning the failure of its allegations to support a claim for tortious interference under Connecticut law. As demonstrated by Xerox's Motion, CCS's allegations indicate that Xerox is a competitor of CCS (an allegation it must make to support its antitrust claim) and that Xerox acted competitively. Such allegations cannot form the basis of a tortious interference claim.

CCS claims that Xerox's privilege as a competitor is defeated by Xerox's "malice." Opposition at 27 (citing *Dowling v. First Fed. Bank*, 1995 WL 405827 (Conn. Super. 1995)). But CCS's own citation to *Dowling* demonstrates the gaping hole in its tortious interference

---

[4] To the extent the Court agrees with CCS's arguments concerning the "law of the case" in relationship to CCS's tortious interference claim, CCS should be bound to the *entirety* of Judge Vratil's opinion. Judge Vratil refused to allow CCS, at the summary judgment stage, to broaden its tortious interference claim to bring in other customers. *See In re Serv. Orgs. Antitrust Litig.*, 114 F.Supp. 2d at 1081 n.5. Judge Vratil refused to countenance *any* amendment at that late stage. As the Second Circuit has held, it is an appropriate exercise of a court's discretion to prevent a party from amending and expanding its claims after the filing of summary judgment motions. *See Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000), *cert. denied,* 532 U.S. 923, 121 S.Ct. 1362 (2001); *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir.), *cert. denied,* 531 U.S. 979, 121 S.Ct. 427 (2000); *Cahill v. O'Donnell*, 75 F. Supp. 2d 264, 279 (S.D.N.Y. 1999) ("Our Circuit has consistently found prejudice and denied amendments where discovery has already been completed and summary judgment motions have been filed."). Accordingly, if the "law of the case" is to apply, CCS should be able to pursue its tortious interference claim only as it pertains to the State of Connecticut.

claim. As *Dowling* states, "the context and the course of the decisions make it clear that what is meant is not malice in the sense of ill-will but merely intentional interference *without justification*." 1995 WL 405827 at *1 (emphasis added).

It is CCS's own allegation that provides the very justification discussed by the *Dowling* court. In paragraph 3 of the Third Amended Complaint, CCS alleges that Xerox is its competitor in the market for servicing "high volume copiers." As set forth in the Restatement of Torts and the cases cited in Xerox's motion, competition is always a valid justification to interfere with a competitor's business expectancy. *See Restatement (Second) of Torts* § 768 (competition with the plaintiff cannot be improper means necessary to support tortious interference claim); *International Mktg., Ltd. v. Archer-Daniels Midland Co.,* 192 F.3d 724, 731 (7th Cir. 1999) (dismissing claim of tortious interference where competition was evident from face of complaint); *Fred Siegel Co. v. Arter & Hadden*, 707 N.E.2d 853, 860-61 (Ohio 1999); *Mannion v. Stallings & Co.*, 561 N.E.2d 1134, 1141 (Ill. 1990); *Ramirez v. Selles*, 784 P.2d 433, 435-37 (Or. 1989) (allegations that show on their face that rival's acts are privileged do not support a claim of intentional interference with economic relationship); *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,* 406 N.E.2d 445, 448-49 (N.Y. 1980). As such, Xerox has a *per se* justification for interfering with CCS's business expectancy. Interfering with a competitor's business expectancy is exactly what is meant by competition; in the absence of such a privilege, the courts would be flooded with tortious interference claims between competitors.

### C.    The October 2001 Stipulation Did Not Waive Xerox's Right To Move To Dismiss CCS's Tortious Interference Claim

CCS argues (Opposition at 26 & n.6) that the Stipulation of October 26, 2001, precludes any dismissal of its new and revised tortious interference claim. CCS intimates that by

stipulating that CCS could amend its Complaint, Xerox implicitly waived its right to challenge

the sufficiency of CCS's tortious interference claim.  This argument is contemptible.   The

October 26, 2001 Stipulation reads, in its entirety:

> 1.    Defendant consents to plaintiff's motion for leave to file an
> amended and supplemental complaint;
>
> 2.    Plaintiff consents to extending defendant's time to answer,
> move, or otherwise plead to said amended and supplemental
> complaint to Monday, December 17, 2001

There is absolutely nothing in this stipulation that restricts Xerox's ability to move to dismiss

CCS's tortious interference claim; on the contrary, the Stipulation expressly contemplates that

Xerox will file such a motion to dismiss.  At no time has Xerox acceded to CCS's desire to

revise its tortious interference claim or expand it beyond the State of Connecticut.

## IV.    CCS'S CUTPA CLAIM FAILS AS A MATTER OF LAW

CCS's claim under the Connecticut Unfair Trade Practices Act ("CUTPA") fails as a

matter of law because it fails to allege any conduct that is actionable under CUTPA.  As Xerox

argued in its Motion, conduct that does not violate the antitrust laws cannot, as a matter of law,

form the basis of a CUTPA claim.  *See* Xerox Mem. at 25-26.  In addition, Xerox noted that in

the absence of showing that its conduct violated the antitrust laws, CCS must allege conduct that

constitutes an independent tort, and that it had not done so.

CCS, again inserting rhetoric where it can provide no reasoning, calls Xerox's analysis

"perfunctory and off-point."  Yet, when it comes to providing its own analysis, CCS does not

provide any valid basis to contradict that "perfunctory" analysis:

- CCS criticizes the Court's *CDC* decision, *CDC Techs., Inc. v. Idexx Labs., Inc.*, 7 F.
  Supp. 2d 119, 132 (D. Conn. 1998), *aff'd*, 186 F.3d 74 (2d Cir. 1999), which states
  quite clearly that conduct that does not violate the antitrust laws cannot support a
  CUTPA claim, on the grounds that the Court provides a citation to a case from

another jurisdiction. That the *CDC* court cited a Massachusetts case as persuasive authority, however, does not negate the *CDC* court's ruling. CCS's argument in this regard is simply second-guessing the Court's precedent.

- CCS cites Connecticut cases that state the general proposition that CUTPA was meant to be broadly remedial in nature. However, as the case cited by CCS itself envisions, CUTPA was written "so that courts might develop a body of law responsive to the marketplace practices that actually generate complaints." *Associated Inv. Co. v. Williams Assoc.*, 230 Conn. 148, 157 (1994). It is this very body of law that Xerox relies on in its Motion.

- CCS states the obvious proposition that "there is obviously no requirement of proving a federal antitrust violation as a predicate to a CUTPA violation." Opposition at 30. Xerox never makes such a broad-ranging argument. Instead, Xerox notes that, as stated by the Court in the *CDC* case, if the allegations supporting a CUTPA claim are identical to those supporting an antitrust claim – as is clearly the case here – the failure of the antitrust claim also leads to the failure of the CUTPA claim. *See CDC,* 7 F. Supp. 2d at 132.

## V.    CCS'S ALLEGATIONS DEMONSTRATE THAT IT HAS NO STANDING TO BRING A LANHAM ACT CLAIM

CCS's Opposition to Xerox's Motion to Dismiss with regard to CCS's Lanham Act claim is noticeable inasmuch as it does not contest the key point of Xerox's Motion, i.e., that CCS's allegations demonstrate that it could not sell "new" machines to the State of Connecticut, and thus CCS has no injury in fact to give it standing to bring a Lanham Act claim. As discussed in Xerox's Motion, a Lanham Act plaintiff must allege that it has suffered an injury in fact as a result of the defendant's misrepresentation. *See* Xerox Mem. at 26. Because CCS could not have sold new machines to the State of Connecticut, it has no standing to bring suit based on Xerox's alleged misrepresentations with regard to Xerox's sale of "new" machines to the State of Connecticut.

CCS's only substantive response to Xerox's argument is its citation to a *below-cost pricing* claim decided by the Second Circuit. Such claims, however, have no relationship to the proof necessary under the Lanham Act, which restricts false advertising claims to those who

have suffered injury in fact. *See Omega Eng'g, Inc. v. Eastman Kodak Co.*, 30 F. Supp. 2d 226, 255 (D. Conn. 1998) (citing *Berni v. International Gourmet Rests. of Am., Inc.*, 838 F.2d 642, 648 (2d Cir. 1988)). There is good reason for the Lanham Act's injury in fact requirement; otherwise any person could sue based on a false advertising claim, whether or not they were injured by the allegedly false or misleading claim. Chevrolet cannot sue McDonald's for allegedly misleading claims about its hamburgers. That is just as true here; CCS admits that it does not sell "new" machines and that the State of Connecticut was only interested in purchasing "new" machines. It would not have made a sale but for Xerox's alleged misrepresentation. As such, its claim fails as a matter of law.[5]

## <u>CONCLUSION</u>

For the reasons cited herein and in Xerox's Memorandum in Support, CCS's antitrust, defamation, tortious interference, and Lanham Act claims should be dismissed pursuant to Rule 12(b)(6).

---

[5] CCS also oddly argues that Xerox should not be allowed to move to dismiss a claim based on an accepting the truth of allegation that it has denied in a previous Answer. That argument simply forgets the nature of a Rule 12(b)(6) motion – which is predicated upon accepting the allegations of a Complaint as true. If Xerox were to contest the allegation at this phase, its Motion would properly be rejected for *failing* to accept the allegation as true. If CCS's real complaint is that the allegation that defeats its own claim is not true, it has no one to blame but itself for the allegation.

Respectfully submitted,

_____

| | |
|---|---|
| Peter K. Bleakley | Robert P. Dolian (ct04278) |
| Jonathan I. Gleklen | CUMMINGS & LOCKWOOD LLC |
| Christopher F. Winters | Four Stamford Plaza, 107 Elm Street |
| Jon J. Nathan | Stamford, Connecticut  06902 |
| ARNOLD & PORTER | (203) 351-4307 |
| 555 Twelfth Street, N.W. | fax: (203) 708-3948 |
| Washington, D.C. 20004-1206 | email: rdolian@cl-law.com |
| (202) 942-5000 | |
| fax: (202)-942-5999 | |
| email: jonathan_gleklen@aporter.com | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| ————————————————— | ) | |
| CREATIVE COPIER SERVICES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | |
| | ) | No.  01-CV-155 (SRU) |
| XEROX CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| ————————————————— | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2004, I served a copy of the foregoing Motion to Dismiss and Memorandum in Support of Xerox's Motion to Dismiss by first class mail upon the following counsel for Plaintiff Creative Copier Services:

> Robert LaRocca
> Kohn, Swift & Graf, P.C.
> One South Broad Street – Suite 2100
> Philadelphia, PA 19107-3389

and

> Elias A. Alexiades
> 215 Church Street, 2nd Floor
> New Haven CT 06510

———————————————
Robert P. Dolian (ct04278)
CUMMINGS & LOCKWOOD LLC
Four Stamford Plaza, 107 Elm Street
Stamford, Connecticut  06902
(203) 351-4307
fax: (203) 708-3948
email: rdolian@cl-law.com

.StmLib1:1065879.1 07/06/04