## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| CREATIVE COPIER SERVICES, ) | |
| ) | |
| Plaintiff, ) | Civil Action |
| ) | No.  01-CV-155 (SRU) |
| v. ) | |
| ) | |
| XEROX CORPORATION, ) | |
| ) | |
| Defendant. ) | Filed July 22, 2004 |
| ) | |

**XEROX CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION
TO STRIKE XEROX'S MOTION FOR SUMMARY JUDGMENT,
AND FOR RULING THAT SUMMARY JUDGMENT MOTIONS
ARE NOT TO BE FILED PIECEMEAL**

Apparently lacking a sense of irony, Plaintiff Creative Copier Services ("CCS")
has filed a Motion to Strike Xerox Corporation's ("Xerox") Summary Judgment Motion
in the name of "efficient use of the Court's time or the parties' time and resources."  But
CCS's Motion is exactly what it seeks to prevent – an inefficient use of the Court's and
Xerox's resources.  Indeed, CCS's requested relief is dedicated to a single purpose –
keeping CCS's antitrust claims alive pending litigation of CCS's ancillary claims (should
they survive Xerox's Motion to Dismiss) while the record on CCS's antitrust claim
yellows with extreme age.

CCS's Motion is baseless. Rather than pointing the Court to a substantive basis
for its Motion, CCS ignores the pertinent provisions of the Federal Rules of Civil
Procedure and even stoops to misrepresenting the state of the record before Judge Vratil
of the District of Kansas.  Federal Rule of Civil Procedure 56(b) plainly allows Xerox to
seek summary judgment in its favor "as to all or any part" of CCS's claims against it "at

any time." CCS's Motion cites no precedent as to why the Court should disregard Rule 56(b) and prohibit Xerox from seeking summary judgment on CCS's antitrust claim on a fully developed record. Moreover, Xerox's statute of limitations and mitigation defenses, the issues *have been briefed previously* by the parties during the course of litigation before Judge Vratil. There simply is no substantial burden placed on the parties.

Finally, a number of CCS's characterizations of the record in this case are misleading or false and should be corrected. Xerox made no waiver of its prior defenses in this case, nor did Judge Vratil rule on the merits of those defenses. Further, Xerox made its intention to file for summary judgment clear during the Court's March 31 status conference.

## PROCEDURAL HISTORY

CCS purports to provide a "pertinent procedural history" of this case for the purposes of its Motion. CCS omits several substantial and important portions of the litigation history of this case that place its Motion in the proper context. Accordingly, Xerox will set forth more fully the posture of this litigation and CCS's Motion.

CCS filed its first Complaint against Xerox in 1994 in the Northern District of California. (CCS was one of twenty-one plaintiffs named in its initial Complaint; CCS subsequently retained separate counsel and filed a separate complaint.) Xerox moved to consolidate CCS's case with another case based on Xerox's 1984 and 1987 parts policies before the Judicial Panel on Multidistrict Litigation ("JPML"). The JPML granted Xerox's motion on October 5, 1994, and CCS's case was consolidated in the District of

Kansas for the purposes of discovery and dispositive motions with the case brought by

Copier Services Unlimited, Inc. ("CSU").[1]

Discovery proceeded in CCS's case against Xerox. The District of Kansas

initially set a discovery deadline of April 30, 1996, but then extended that deadline to

August 30, 1996, to allow for the completion of discovery that had already been

requested. The parties conducted expert discovery from December 2, 1996, to January

17, 1997. At that time, the only remaining discovery consisted of the depositions of two

CCS experts by Xerox.

In January of 1997, Xerox made several motions for summary judgment against

CSU on CSU's claims and its own counterclaims. Xerox held off moving for summary

judgment in CCS's case, however, because previously it had agreed to CCS' request to

postpone both the deposition of CCS's experts and the filing of dispositive motions until

three weeks after judgment had been entered in the CSU case. Under the same

agreement, the parties also agreed that the case would be transferred to the District of

Connecticut when it became ready for trial, but that the District of Kansas would retain

jurisdiction to hear the parties' summary judgment motions. *See In re Independent Servs.*

*Orgs. Antitrust Litig.*, Civ.A. MDL-1021, 1998 WL 919125, at *1 (D. Kan. Dec 31,

1998).

The Court granted Xerox's motion for summary judgment against all claims

asserted by CSU on April 8, 1997. *See In re Independent Serv. Orgs. Antitrust Litig.*, 964

---

[1] Copier Services Unlimited later changed its name and form of organization to CSU, LLC.

F. Supp. 1479 (D. Kan. 1997).    After trial on Xerox's copyright infringement counterclaim, final judgment was entered against CSU on September 3, 1997.

The *CSU* decision spurred CCS to attempt to distance itself from its prior positions in the case.  Reneging on its agreement with Xerox, in October of 1998, CCS asked the District of Kansas to transfer the case to this Court for the purposes of deciding the dispositive motions.  It also tried to re-open the discovery that had been closed for nearly two years.  Judge Vratil of the District of Kansas denied both motions in a December 31, 1998, Order.  *See In re Independent Servs. Orgs. Antitrust Litig.*, 1998 WL 919125, at *5.[2]

Subsequent to Judge Vratil's ruling, counsel for CCS informed Xerox that it would attempt to expand its claims against Xerox by either amending its complaint or filing a new action against Xerox in Connecticut.   Rather than to have two litigations proceeding separately in two courts, Xerox and CCS agreed to toll the statute of limitations on CCS's new claims and litigate those claims when this case was transferred to this Court.

In the spring of 1999, Xerox sought summary judgment against CCS's antitrust and state law claims, as well as on its own copyright and patent infringement counterclaims.    Xerox sought summary judgment against CCS's antitrust claim on multiple grounds, including a separate motion for summary judgment on statute of limitations grounds.  CCS opposed Xerox's motions and filed its own cross-motion for summary judgment on Xerox's patent infringement counterclaim.

---

[2] CCS moved to reconsider that Order, but the Court denied its Motion.

4

On February 17, 2000, Judge Vratil issued her rulings on the summary judgment motions. *See In re Independent Servs. Orgs. Antitrust Litig.*, 114 F. Supp. 2d 1070 (D. Kan. 2000). Judge Vratil, inter alia, granted Xerox's motion for summary judgment against CCS's antitrust claim on the grounds that Xerox's refusal to sell CCS patented parts could not constitute an antitrust violation, and that, in light of CCS's expert testimony that CCS needed access to *all* parts, CCS could not show that it was damaged *but for* Xerox's refusal to sell CCS unpatented parts. *See id.* at 1090-94.

Judge Vratil, however, did not reach Xerox's alternative grounds for summary judgment, holding:

> Given that the Court sustains the Xerox motion for summary judgment on plaintiff's antitrust claims on the above grounds, it need not reach the issues of plaintiff's alleged failure to mitigate its damages or the timeliness of plaintiff's antitrust claims.

*Id.* at 1096 n.18.

CCS moved for reconsideration of Judge Vratil's ruling on its antitrust claims. Judge Vratil denied that motion. CCS then moved for certification of the summary judgment pursuant to 28 U.S.C. § 1292, arguing that there was a substantial question as to the Judge's ruling on summary judgment. Judge Vratil denied that motion as well.

Judge Vratil then transferred this case to the Northern District of California, the jurisdiction from whence it came, which then transferred the case to this Court in early 2001. CCS moved to reconsider Judge Vratil's dismissal of its antitrust claims for a third time before the Court, and filed a Second Amended and Supplemental Complaint to assert additional claims against Xerox. Xerox opposed CCS's Motion and moved to dismiss CCS's Second Amended and Supplemental Complaint.

On March 30, 2004, the Court granted CCS's motion to reconsider Judge Vratil's summary judgment ruling, and also dismissed CCS's Second Amended and Supplemental Complaint with leave to refile. The Court then held a status conference on the case on March 31, 2004. At that conference, counsel for Xerox indicated that not only would it renew its motion to dismiss CCS's complaint as amended, but that Xerox would seek summary judgment on CCS's antitrust claim as well.

Subsequent to that status conference, and pursuant to a stipulated Scheduling Order, CCS filed its Third Amended Complaint on April 30. Xerox moved to dismiss CCS's Third Amended Complaint on May 30. In addition, on June 24, Xerox filed a motion for summary judgment on CCS's antitrust claim on three grounds: (1) that CCS's claim was barred by the statute of limitations; (2) that CCS cannot prove the facts necessary to sustain a single-brand aftermarket claim; and (3) that CCS failed to mitigate its damages as a matter of law.

In response to Xerox's motion for summary judgment, CCS filed the instant motion.

## ARGUMENT

I.     **RULE 56(b) PERMITS XEROX TO SEEK PARTIAL SUMMARY JUDGMENT AGAINST CCS'S ANTITRUST CLAIM.**

CCS's Motion to Strike ultimately depends upon an argument that Rule 56 somehow does not mean what it says. The language of Rule 56(b) could hardly be more clear; it expressly authorizes a defendant to move for summary judgment "*at any time*" as to "*all or any part*" of a claim. Fed. R. Civ. P. 56(b) (emphasis added). Because the language of Rule 56 does, in fact, mean what it says, CCS's Motion to Strike must be denied.

The express language of Rule 56 is the beginning and the end of the matter. Nevertheless, Xerox notes that partial summary judgments have been recognized as a useful tool for shaping litigation, and early motions for summary judgment are encouraged. *See Manual for Complex Litigation*, *Fourth* § 11.34 ("Summary judgment may eliminate the need for further proceedings or at least reduce the scope of discovery or trial. . . . To avoid pretrial activities that may be unnecessary if the summary judgment motion is granted, the schedule should call for filing the motion as early as possible in the litigation."); *see generally Healey v. Shalala*, 2000 WL 303439, *8 (D. Conn. Feb. 11, 2000) ("Partial summary judgment is often particularly useful in shaping litigation.") (citing 11 J. Moore, *Federal Practice* § 56.40[2] (1999)).  This Court routinely grants motions for partial summary judgment. *See, e.g.*, *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163 (D. Conn. 2003) (granting officers' motions for partial summary judgment); *Yale Univ. v. Cigna Ins. Co.*, 224 F. Supp. 2d 402 (D. Conn. 2002) (granting partial summary judgment to insurers on first-party property policies); *United States v. Speight*, 2001 WL 539610 (D. Conn. May 17, 2001) (granting government's motion for partial summary judgment).  Accordingly, Xerox's motion for partial summary judgment against CCS's antitrust claim is well founded.

CCS's sole authority for its motion – coming only as a block quote afterthought on the last page of its brief – is a statement from Professor Moore's treatise suggesting that courts should look with disfavor on repetitive summary judgment where such subsequent motions create the threat of harassment. *See* CCS Motion at 9 (citing 11 Moore's Federal Practice, § 56.10[7]).  That authority is inapposite on its face.  Xerox is not filing a repetitive motion for summary judgment that has already been denied in order

to harass CCS.  Rather, Xerox is renewing its motion for summary judgment on two of the same issues it raised in a prior briefing before Judge Vratil that she found moot in light of her summary judgment against CCS on other grounds.  Indeed, with regard to the mitigation and statute of limitations grounds, CCS need only re-file its briefs on those issues.

Moreover, there is nothing to be gained, as CCS implies, from delaying a ruling on Xerox's motion for summary judgment with respect to CCS's antitrust claim based on Xerox's unilateral refusal to sell parts to CCS.  Discovery in this case closed more than six years ago.  Mr. Dixon, CCS's sole proprietor, was deposed twice in 1996.  In all material respects with regard to Xerox's motion, the record is fully developed on CCS's antitrust claim.

CCS further suggests that Xerox's partial summary judgment motion will impose a significant burden on the Court because "the Court will likely to [be] forced to immerse itself on the same record evidence (at least) twice, because this is not the only summary judgment motion Xerox intends to make."  As an initial matter, CCS's argument presumes the conclusion that Xerox's summary judgment motion will be denied and that a further motion on CCS's antitrust claim will be necessary.  More fundamentally, that argument rings hollow coming from CCS; CCS has already forced the Court to examine the record evidence concerning its antitrust claim by filing a motion to reconsider Judge Vratil's ruling on summary judgment.  Because of the briefing on that motion, as well as Judge Vratil's prior ruling, the Court is likely to be familiar with the record in this case and little additional effort will be necessary to rule on Xerox's Motion.

CCS also contends that Xerox's Motion is "the first of what Xerox intends as a series of summary judgment motions which Xerox, a Fortune 500 company, sees as its tactical opportunity to wear down plaintiff, a sole proprietorship."[3]  This contention is absurd given CCS's highly litigious motions practice in this litigation.  As discussed above, CCS has filed no fewer than *three* separate motions seeking reconsideration of Judge Vratil's summary judgment order in one form or another.  It has filed, among other things, motions to re-open discovery, reconsideration of Judge Vratil's denial of its motion to re-open discovery, to strike Xerox's declarations in support of summary judgment, to make the Court aware of supplemental authority, and this Motion itself.  It has filed four different complaints against Xerox.  Accordingly, CCS and its counsel have betrayed no lack of resources in putting paper before the Court; indeed, if any party is attempting to litigate by attrition and tactical motion, it is CCS, not Xerox.  Instead, Xerox simply seeks, through its Motion for Summary Judgment, a swifter end to CCS's antitrust claim, which is celebrating its 10th anniversary this year.

## II.    XEROX HAS NOT WAIVED ITS MITIGATION OR STATUTE OF LIMITATIONS DEFENSES

CCS argues that Xerox has either waived its statute of limitations and mitigation defenses by failing to raise them in response to CCS's Motion to Reinstate  or has "demonstrate[d] that Xerox itself gave very little credence to these arguments."  CCS Motion at 6.  This argument is wrong as both a factual and legal matter.

---

[3] CCS cites to a footnote in Xerox's brief in which Xerox refers to a companion motion to seek summary judgment on statute of limitations grounds against CCS's tortious interference claim.  That footnote was erroneous.  Although Xerox reserves its right to file such a motion, it has no plans to file such a motion in the near future.  Indeed, no such motion will ever be necessary if the Court grants Xerox's motion to dismiss the claim.

First, Xerox did in fact draw the Court's attention to Xerox's limitations and mitigation defenses. On page 5, n.1 of Xerox's Opposition to Plaintiff's Motion to Reinstate Count II of the Complaint, Xerox stated:

> Judge Vratil did not need to address Xerox's argument that CCS's antitrust claims were barred because CCS had failed to mitigate its damages and overruled as moot Xerox's motion for summary judgment on statute of limitations grounds. *See* [*In re ISO Antitrust Litig.*, 114 F. Supp. 2d 1070, 1115 (D. Kan. 2000)]. If the Court is inclined to grant CCS's Motion to Reinstate, Xerox respectfully requests that the Court either review the parties' briefs addressing the mitigation and limitations issues filed in the District of Kansas or afford the parties a chance to re-brief these issues in this Court.

Even if Xerox had not raised its limitations and mitigation defenses in its opposition to CCS's Motion to Reinstate, CCS cites no authority – and there is none – for the proposition that Xerox had any obligation to do so. Xerox's response to CCS's motions for reconsideration before Judge Vratil and before the Court properly focused on the pertinent standards for motions for reconsideration, not the myriad of reasons why CCS's antitrust claim was defective. CCS's waiver argument would, if adopted, mutate reconsideration motions into re-litigation of every possible issue raised in a previous order, rather than the limited and highly unusual motions that the Federal Rules intend such motions to be.[4]

---

[4] CCS's further contention that Xerox somehow "gave very little credence" to its statute of limitations and mitigation defenses by not raising them is an absurd suggestion. As shown in Xerox's Motion, CCS's claim fails as a matter of law on statute of limitations and mitigation grounds. Xerox made a separate motion for summary judgment on statute of limitations grounds before Judge Vratil, and devoted substantial portions of its antitrust summary judgment motion to the mitigation defense. Indeed, CCS dedicated scores of pages responding to these defenses before Judge Vratil.

### III.    CCS MATERIALLY MISSTATES THE RECORD IN ITS MOTION.

We described above CCS's erroneous claim that Xerox failed to note its statute of limitations and mitigation defenses in responding to CCS's Motion to Reinstate.  Xerox is compelled to point out that this misstatement was only one of a number of material misrepresentations of the record in CCS's Motion to Strike.

*First*, and most egregiously, CCS insidiously uses editor's brackets to argue that Judge Vratil has already found that "key events" occurred after the limitations period in her summary judgment opinion.  CCS quotes Judge Vratil's Order as reading:

> "On January 11, 1989, Xerox formally adopted its 'On Site End User Verification Procedure'" [i.e. its refusal to sell parts to ISO's].

CCS Motion at 4.  There are no such brackets in the Court's ruling, nor could CCS reasonably insert such editing into Judge Vratil's decision.  CCS's misleading brackets attempt to imply that Judge Vratil held that: (1) Xerox's Verification Procedure constituted Xerox's refusal to deal with CCS; and/or (2) that Xerox's refusal to sell CCS parts occurred only after January 11, 1989.  CCS very well knows that Judge Vratil made no such finding and, indeed, that the facts would not support such a finding.  On the contrary, Judge Vratil's decision, among other things, states that:

> In 1984, Xerox decided that it would sell replacement parts for its "10 series" copiers to end users and authorized service resellers, but not to ISOs.  *See id.* ¶  3; Antitrust SOF ¶ 4.  In January 1987, Xerox extended this policy to its newer 9 series and 50 series copiers.   *See* Stat. of Lim. SOF ¶  10.  CCS alleges that as a result of this policy, its ability to purchase restricted parts from Xerox became the exception rather than the norm. *See id.*

114 F. Supp. at 1083.  Judge Vratil never equated the 1989 Verification Policy with the refusal to sell CCS parts.  Furthermore, CCS's own sole proprietor testified that *none of*

*CCS's customers* received inspections under the Verification Policy and that CCS was inspected on only one occasion for less than 30 minutes under the policy. *See* Xerox Motion at 12-13. That policy cannot even remotely be considered to be a "refusal to deal," and CCS's attempt to put words in Judge Vratil's mouth on this point is beyond the bounds of permissible advocacy.

*Second*, CCS contends that Xerox's Motion for Summary Judgment "does not address" the "anti-competitive actions that occurred well within the limitations period," apparently a reference to Xerox's "Verification Policy." Again, this statement is false and intended to color the Court's perception of Xerox's Motion. Xerox addresses at length why the implementation of the Verification Policy is immaterial to CCS's antitrust claim. *See* Xerox Motion at 11-15. Indeed, as Xerox's Motion shows, CCS's sole proprietor, Bill Dixon, acknowledged that Xerox had refused to sell CCS parts well before the implementation of the Verification Policy. *See id.* at 13-14.

Moreover, because Xerox's motion also attacks CCS's definition of the relevant product market, Xerox's motion would require entry of summary judgement against CCS's antitrust claims without regard to the timing or nature of the conduct challenged by CCS because "[w]ithout a definition of that market there is no way to measure [a defendant's] ability to lessen or destroy competition." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965). *See generally Belfiore v. New York Times Co.*, 826 F.2d 177, 180 (2d Cir. 1987) (holding that district court's grant of summary judgment on Sherman Act claim was appropriate because plaintiff's market definition was "implausible as a theoretical matter"), *cert. denied,* 484 U.S. 1067 (1988); *Commercial Data Servers, Inc. v. International Bus. Mach., Inc.*, 262 F. Supp. 2d 50, 72

(S.D.N.Y. 2003) (rejecting plaintiff's narrow market definition and granting summary judgment in favor of defendant on antitrust claims); Xerox Motion at 16-17.

*Finally*, CCS claims that Xerox filed its Motion for Summary Judgment "without prior notice." That claim is false. Counsel for Xerox informed the Court (and CCS's counsel) during the March 31, 2004, status conference that developments in the law since the briefing of Xerox's last round of summary judgment motions had made clear that CCS's market definition could not stand as a matter of law and that this defense might be raised as a motion for summary judgment given that it depended upon facts not alleged in CCS's Complaint. Although no transcript was made of the status conference, Counsel for Xerox recalls the Court stating that Xerox should "file whatever it thinks it needs to file."

## IV.    THE COURT SHOULD AWARD XEROX ITS FEES AND COSTS INCURRED IN RESPONDING TO CCS'S MOTION.

Because CCS's Motion is objectively baseless, is without supporting authority, contains numerous substantial misstatements of the record, and vexatiously multiplies this litigation as a part of CCS's attempt to forestall a decision on Xerox's Motion for Summary Judgment, Xerox seeks an award of its costs and attorney's fees associated with responding to this Motion. Such fees and costs are properly awardable pursuant to 28 U.S.C. § 1927 or the inherent power of the Court. *See, e.g.*, *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) (holding that sanctions are appropriate where it is clear that a party's actions are without color and are intended to harass or delay).

## **CONCLUSION**

For the aforementioned reasons, CCS's Motion should be denied and Xerox

should be awarded its costs and attorney's fees associated with responding to this Motion.

Respectfully submitted,

/s/

| | |
|---|---|
| Peter K. Bleakley | Robert P.  Dolian (ct04278) |
| Jonathan I. Gleklen | CUMMINGS & LOCKWOOD LLC |
| Christopher F. Winters | Four Stamford Plaza, 107 Elm Street |
| Jon J. Nathan | Stamford, Connecticut  06902 |
| ARNOLD & PORTER | (203) 351-4307 |
| 555 Twelfth Street, N.W. | fax: (203) 708-3948 |
| Washington, D.C. 20004-1206 | email: rdolian@cl-law.com |
| (202) 942-5000 | |
| fax: (202)-942-5999 | |
| email: jonathan_gleklen@aporter.com | |

Peter W. Marshall
Senior Counsel
XEROX CORPORATION
800 Long Ridge Road
Stamford, CT  06904
(203) 968-4590

*Attorneys For Defendant Xerox Corporation*

Dated July 22, 2004

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CREATIVE COPIER SERVICES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action |
| v. | ) |
| | ) No.  01-CV-155 |
| XEROX CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2004, I served a copy of the foregoing Motion for Summary Judgment and Memorandum in Support of Xerox's Motion for Summary Judgment by first class mail upon the following counsel for Plaintiff Creative Copier Services:

> Robert LaRocca
> Kohn, Swift & Graf, P.C.
> One South Broad Street – Suite 2100
> Philadelphia, PA 19107-3389

and

> Elias A. Alexiades
> 215 Church Street, 2nd Floor
> New Haven CT 06510

> /s/
> Robert P. Dolian (ct04278)
> CUMMINGS & LOCKWOOD LLC
> Four Stamford Plaza, 107 Elm Street
> Stamford, Connecticut  06902
> (203) 351-4307
> fax: (203) 708-3948
> email: rdolian@cl-law.com
> ***Counsel for Xerox Corporation***

.StmLib1:1068117.1 08/12/04