**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CREATIVE COPIER SERVICES, | )<br>)<br>) |
| Plaintiff, | )<br>) Civil Action |
| v. | )<br>) No. 01-CV-155 (SRU) |
| XEROX CORPORATION, | )<br>) |
| Defendant. | )  , 2005<br>) |

**Defendant Xerox Corporation's Answer and
Counterclaims to the Third Amended Complaint of Creative Copier Services**

Defendant Xerox Corporation ("Xerox"), for its Answer to the Third Amended Complaint of Creative Copier Services ("CCS") herein, admits, denies, or alleges as follows:

1. Admits that CCS, at certain times relevant herein, has serviced certain copiers manufactured by Xerox, but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 and therefore denies them.

2. Admits that it is a New York corporation with its principal executive offices in Stamford, Connecticut. Xerox also admits that among the businesses in which it engages, or has engaged, is the sale and lease of newly manufactured and remanufactured high volume copiers along with the sale of maintenance service and replacement parts for such equipment.

3. Admits that CCS at certain times relevant herein has competed with Xerox for the servicing of certain high volume copiers with rated speeds greater than 50 copies per minute, but otherwise lacks knowledge or information sufficient to form a belief as to

the truth of the allegation that CCS competes with Xerox for the sale of reconditioned Xerox machines and therefore denies such allegation.

4. Admits that, in Paragraph 4, CCS brings this action under the cited statutes and that this court has jurisdiction over this action, but denies that Xerox has engaged in any unlawful practice or that CCS has meritorious claims or is entitled to the requested relief.

5. Admits the allegations of Paragraph 5.

6. Admits that the FTC filed a complaint against Xerox in 1973 and that Xerox, without admitting liability, signed a consent decree settling this complaint in 1975. Xerox otherwise denies the allegations contained in Paragraph 6.

7. Admits that it sold parts to ISOs between 1973 and 1983 and admits that it earned a margin on the sale of used copiers and parts. Xerox denies that such sales were more profitable than the sale of service or copiers to end users and otherwise denies the allegations contained in Paragraph 7.

8. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 and therefore denies them.

9. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 and therefore denies them.

10. Admits that it assigned CCS a customer number, denies that it ever stated that it would provide parts to CCS other than to service copiers owned by CCS, and otherwise lacks knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 10 and therefore denies them.

11. Denies that it provided CCS any "assurance" and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegation contained in Paragraph 11 and therefore denies it.

12. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 and therefore denies them.

13. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 and therefore denies them.

14. Admits that customers generally have "uptime" requirements, which vary from customer to customer, and otherwise denies the allegations contained in Paragraph 14.

15. Admits that Xerox provided training to one or more CCS employees in the service of Xerox Model 1055 copiers but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 and therefore denies them.

16. Admits that, because it provided training only to end users, Xerox required CCS to own a Xerox Model 1075 copier in order to be trained in its service, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 and therefore denies them.

17. Denies that it ever stated that Xerox would provide parts to CCS other than to service copiers owned by CCS and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 and therefore denies them.

18. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in sentences 1-3 of Paragraph 18 and therefore denies them. Admits that it initially cancelled training for a CCS employee but later agreed to provide such training, but otherwise denies the allegations of this paragraph.

19. Denies the allegation contained in Paragraph 19.

20. Admits that Paragraph 20 purports to describe a particular Xerox document, which document speaks for itself, and otherwise denies the allegations contained in Paragraph 20.

21. Admits that Paragraph 21 purports to describe a particular Xerox document, which document speaks for itself, and otherwise denies the allegations contained in Paragraph 21.

22. Denies the allegations in Paragraph 22.

23. Admits that Paragraph 23 purports to describe various Xerox documents, which documents speaks for themselves, and otherwise denies the allegations contained in Paragraph 23.

24. Admits that Paragraph 24 purports to describe a particular Xerox document, which document speaks for itself, and otherwise denies the allegations contained in Paragraph 24.

25. Admits that Xerox had a policy of selling parts to end users for the service of copiers that they owned and that Xerox, on rare occasions, verified that parts sales were consistent with this policy, and otherwise denies the allegations in Paragraph 25.

26. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 and therefore denies them.

27. Admits that it sometimes refused to sell parts to CCS in excess of those quantities that CCS required to service copiers that it owned and otherwise denies the allegations in Paragraph 27.

28. Admits that CCS sometimes ordered parts on an overnight basis, admits that Xerox on one occasion conducted an "on-site verification," and otherwise denies the allegations of Paragraph 28 or lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 and therefore denies them.

29. Denies the allegations contained in Paragraph 29.

30. Denies the allegations contained in Paragraph 30.

31. Admits that Paragraph 31 purports to describe a particular Xerox document, which document speaks for itself, and otherwise denies the allegations contained in Paragraph 31.

32. Denies the allegations contained in Paragraph 32.

33. Denies the allegations contained in Paragraph 33.

34. Admits that in 1994 Xerox ended its "third party end user parts verification policy" when it settled a lawsuit, and otherwise denies the allegations contained in Paragraph 34.

35. Admits that some clutch assemblies cost nearly $1,000. Xerox also admits that when it enters into an FSMA with an end user customer, it agrees to provide parts and labor to maintain the equipment, that some such FSMAs include supplies, and that the price to the customer is sometimes set as a cost per copy. Otherwise, Xerox denies the allegations contained in Paragraph 35.

36. Admits that Xerox leases Xerox copiers, that such leases typically contain a purchase option price whereby the end user customer may purchase the copier at the end of the lease term, and that the price for the option is typically either a set dollar amount or the fair market value of the equipment at the lease term's conclusion plus any applicable taxes. Xerox lacks knowledge or information as to what is meant by "residual value," and otherwise denies the allegations contained in Paragraph 36.

37. Admits that Aetna leased Xerox Model 1090 copiers, that Xerox serviced these copiers, that Aetna inquired about purchasing such copiers prior to the end of the lease term and otherwise denies the allegations of Paragraph 37.

38. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 and therefore denies them.

39. Admits that, per the terms of its lease agreement with Xerox, only Aetna could buy out the leases.

40. Denies the allegations contained in Paragraph 40.

41. Admits the allegations that Xerox pays ad valorem taxes on its property and otherwise denies the allegation of Paragraph 41.

42. By its Order of November 15 the Court has dismissed the federal antitrust claim alleged in Paragraphs 42-46. Xerox otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 and therefore denies them

43. By its Order of November 15 the Court has dismissed the federal antitrust claim alleged in Paragraphs 42-46. Xerox otherwise admits the allegations contained in Paragraph 43.

44. By its Order of November 15 the Court has dismissed the federal antitrust claim alleged in Paragraphs 42-46. Xerox otherwise denies the allegations contained in Paragraph 44.

45. By its Order of November 15 the Court has dismissed the federal antitrust claim alleged in Paragraphs 42-46. Xerox otherwise denies the allegations contained in Paragraph 45.

46. By its Order of November 15 the Court has dismissed the federal antitrust claim alleged in Paragraphs 42-46. Xerox otherwise denies the allegations contained in Paragraph 46.

47. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 47 and therefore denies them.

48. Denies the allegations contained in Paragraph 48.

49. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49 and therefore denies them.

50. By its Order of November 15 the Court has dismissed the federal antitrust claim alleged in Paragraphs 50-52. Xerox otherwise denies the allegations contained in Paragraph 50.

51. By its Order of November 15 the Court has dismissed the federal antitrust claim alleged in Paragraphs 50-52. CCS's allegations in Paragraph 51 fail to identify the GSA contract in question or the specific Aetna cost per copy contract at issues; Xerox accordingly lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 51 and therefore denies them.

52. By its Order of November 15 the Court has dismissed the federal antitrust claim alleged in Paragraphs 50-52. Xerox otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 and therefore denies them.

53. By its Order of November 15 the Court has dismissed the claim alleged in Paragraphs 53-56, so that no response to the allegations of these paragraphs is required.

54. By its Order of November 15 the Court has dismissed the claim alleged in Paragraphs 53-56, so that no response to the allegations of these paragraphs is required.

55. By its Order of November 15 the Court has dismissed the claim alleged in Paragraphs 53-56, so that no response to the allegations of these paragraphs is required.

56. By its Order of November 15 the Court has dismissed the claim alleged in Paragraphs 53-56, so that no response to the allegations of these paragraphs is required.

57. Admits that in 1994 Xerox settled the *R&D* litigation; the terms of said settlement agreement speak for themselves.

58. Denies the allegation contained in Paragraph 58.

59. Admits that part 30S26733 is a magnetic strip to hold paper for a transport belt, denies that Xerox changed the part number for the identical part or raised its price as alleged by CCS, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 59 and therefore denies them.

60. Admits that part 20P3396 is a pulley but denies that Xerox changed the part number for the identical part or raised its price as alleged by CCS.

61. Admits that part 22K64270 is a thermal fuse but denies that Xerox changed the part number for the identical part or raised its price as alleged by CCS.

62. Admits that part 22K360 is a foam roll but denies that Xerox changed the part number for the identical part or raised its price as alleged by CCS.

63. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 63 and therefore denies it.

64. Denies the allegations contained in Paragraph 64.

65. Admits that it sells copy cartridges only to end users and authorized resellers and otherwise denies the allegations of Paragraph 65.

66. With respect to Paragraph 66, Xerox repeats and realleges its answers to Paragraphs 1 through 65 as if fully set forth herein.

67. Denies the allegations of Paragraph 67.

68. Denies the allegations contained in Paragraph 68.

69. Denies the allegations contained in Paragraph 69.

70. Admits that, in Paragraph 70, CCS invokes the jurisdiction of the court under the cited statutes, but denies that Xerox has engaged in any unlawful practice or that CCS has meritorious claims. Xerox otherwise denies the allegations contained in Paragraph 70.

71. Denies the allegation of Paragraph 71.

72. Xerox repeats and realleges its answers to Paragraphs 1 through 71.

73. Admits that it knew that at certain relevant times CCS competed with Xerox for the repair of certain Xerox machines and otherwise denies the allegations of Paragraph 73.

74. Denies the allegations contained in Paragraph 74.

75. Denies the allegations contained in Paragraph 75.

76. Denies the allegations contained in Paragraph 76.

77. Denies the allegations contained in Paragraph 77.

78. Denies the allegations contained in Paragraph 78.

79. Denies the allegations contained in Paragraph 79.

80. Xerox repeats and realleges its answers to Paragraphs 1 through 79.

81. Admits that, in Paragraph 81, CCS invokes the jurisdiction of this court under the cited statutes, but denies that Xerox has engaged in any unlawful practice or that CCS has meritorious claims. Xerox otherwise denies the allegations contained in Paragraph 81.

82. Denies the allegations contained in Paragraph 82.

83. Denies the allegation of Paragraph 83.

84. Denies the allegation of Paragraph 84.

85. Denies all other and further allegations contained in the Complaint not heretofore admitted, denied or otherwise uncontroverted.

## AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim upon which relief can be granted.

2. Some or all of plaintiff's claims are barred by the statute of limitations.

3. Plaintiff has not suffered injury to its business or property by reason of any conduct that violates the antitrust laws.

4. Plaintiff has not shown that Xerox sacrificed its own short-term profits as required to show that a refusal to deal constitutes anticompetitive conduct that violates the antitrust laws.

5. Plaintiff has not shown that Xerox's refusal to sell repair parts on certain copiers was, with respect to such copiers, a change in Xerox's practice or conduct.

6. Plaintiff's claims are barred in part by the truth of the allegedly disparaging statements.

7. Xerox's Parts Policy and its dealings with its suppliers and affiliates are legitimate exercises of its patent rights and other intellectual property rights that do not violate the antitrust laws.

8. Plaintiff is estopped from asserting some or all of its claims by the settlement and final order approving that settlement in the *R&D* action.

9. Plaintiff has released some or all of its claims against Xerox through the settlement and final order approving that settlement in the *R&D* action.

10. Plaintiff's claims are barred to the extent it failed to mitigate its damages, if any.

11. Plaintiff's claims are barred in part by the doctrine of laches.

12. Plaintiff's claims are barred in part by the doctrine of qualified privilege.

13. Plaintiff's claims for injunctive relief are barred in whole or in part by the doctrine of "unclean hands" because plaintiff and/or its agents have willfully misappropriated and/or unlawfully used Xerox intellectual property and confidential, proprietary information enabling them to compete unlawfully with Xerox.

## COUNTERCLAIMS

Defendant Xerox Corporation ("Xerox"), by its attorneys, counterclaims against Plaintiff-Counterclaim Defendant Creative Copier Service ("CCS") as follows:

11

## SUMMARY OF COUNTERCLAIMS

1. CCS has profited from its willful infringement of Xerox's intellectual property rights, including Xerox's patents and copyrights. By way of this Counterclaim, Xerox seeks compensation for CCS's wrongful misappropriation and infringement of Xerox's intellectual property rights.

2. Count I of the Counterclaim arises under the patent laws of the United States, 35 U.S.C. § 1 et seq. As set forth below, Xerox owns patents claiming inventions incorporated in fuser heat rolls and dicorotrons that CCS uses in its repair of photocopiers. CCS's use of parts that infringe the claims of Xerox's patents constitutes a violation of the patent laws.

3. Count II of the Counterclaim arises under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq. As set forth below, Xerox owns registered copyrights in manuals used in conjunction with its products. CCS has reproduced and distributed these manuals without Xerox's permission in willful violation of the copyright laws.

### The Parties

4. Xerox is a New York corporation with its principal offices in Stamford, Connecticut. Xerox is in the business of inventing, manufacturing, selling and servicing copiers and printers and parts for such copiers and printers.

5. In the Third Amended Complaint filed in this case, CCS alleges that it is the trade name of a sole proprietorship owned by William Dixon with its principal place of business in Middletown, Connecticut and further alleges that it is an actual or potential competitor of Xerox in the United States and Canada for the sale and servicing of copiers and printers.

### Jurisdiction and Venue

6. This Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1331 and § 1338(a).

7. CCS has filed its Third Amended Complaint against Xerox in this Court and thus has consented to jurisdiction over any counterclaim filed in this case. For the same reason, venue in this Court is proper.

### COUNTERCLAIM COUNT I

### (Infringement of U.S. Patents)

8. Xerox realleges and incorporates by reference paragraphs 1 through 7 above as if fully set forth herein.

9. At all times relevant hereto, Xerox was the owner of the United States Patent Number 4,258,258 (the '258 patent) issued on March 24, 1981.

10. At all times relevant hereto, Xerox was the owner United States Patent Number 4,373,239 (the '239 patent) issued on February 15, 1983.

11. At all times relevant hereto Xerox was the owner of United States Patent Number 4,585,322 (the '322 patent) issued on April 29, 1986.

12. The '258 patent, the '239 patent, and the '322 patent (collectively, the "Xerox Patents") were duly issued on the dates noted and Xerox is entitled to sue for infringement thereof and for damages and other appropriate relief resulting from their infringement.

13. The Xerox Patents were the result of Xerox's research and development in xerographic technology. Xerox has been, and continues to be, the leading innovator in the creation and use of this technology.

14. CCS has purchased 1090 family fuser heat rolls from D&R Products, OEM Supplyco, and Graphic Associates.

15. The fuser heat rolls from D&R Products literally infringe claim 1 of the '239 patent and the fuser heat rolls from OEM Supplyco and Graphic Associates infringe that claim under the doctrine of equivalents theory. CCS's use of these infringing heat rolls constitutes an infringement of the '239 patent.

16. CCS has purchased 1090 family dag-coated dicorotrons and non-dag-coated dicorotrons from D&R Products.

17. The D&R Products dag-coated dicorotrons literally infringe claim 1 of the '322 patent and D&R Products family dag-coated and non-dag-coated dicorotrons from D&R Products literally infringe claim 1 of the '258 patent. CCS's use of these infringing dicorotrons constitutes infringement of the '322 patent and the '258 patent.

18. Xerox provided notice of infringement on August 16, 1995 when it originally filed its patent infringement counterclaim, and Xerox is entitled to recover damages for acts of infringement after that date.

19. Xerox has been injured by CCS's infringing activities. Consequently, Xerox is entitled to compensation for these damages from CCS pursuant to 35 U.S.C. § 284 in an amount that cannot be presently quantified, but will be ascertained at trial.

20. CCS's infringement of the Xerox Patents was deliberate and willful. As a result, this is an exceptional case that warrants an award of treble damages and attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## COUNTERCLAIM COUNT II

### (Infringement of Registered Xerox Copyrights: Xerox Manuals)

21. Xerox realleges and incorporates by reference paragraphs 1 through 20 above as if fully set forth herein.

22. CCS, without Xerox's permission, reproduced Xerox service manuals and related service documentation. The documents unlawfully reproduced are henceforth referred to as the "Copied Manuals." Upon information and belief, such copying was willful and intentional.

23. The Copied Manuals are copyrightable subject matter under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq. The Copied Manuals are original works of authorship.

24. At all times, Xerox has been and still is the sole owner and/or assignee of all right, title and interest in and to the copyrights on all versions of the Copied Manuals. Accordingly, Xerox is the sole owner of the rights set forth in the Copyright Act, 17 U.S.C. §106.

25. Xerox has registered its copyrights in the Copied Manuals identified below:

| Registration Number | Title | Date of Registration |
|---|---|---|
| TX2-472-616 | 1050 Product Support Manual, July 1988 | Dec. 23, 1988 |
| TX2-449-656 | 1050 Product Support Supplement, May 1987 700P11480 | Dec. 1, 1988 |
| TX2-008-028 | 1050 Product Support Manual 600P89216 | Nov. 25, 1986 |
| TX4-424-907 | Xerox 1050 MNL Repair Data 700P40570 | Nov. 12, 1996 |
| TX2-472-603 | 700P17430 – 5052 MNL (50/60 Hz) Service Manual, July 1988 | Dec. 23, 1988 |
| TX2-139-108 | 1065 Technical Overview 700P00280 11/86 | Aug. 21, 1987 |

| TX2-380-597 | 1065 MNL (50/60 Hz) Product Support Supplement 7/87   700P01840 | Mar. 3, 1988 |
|---|---|---|
| TX2-255-941 | 1065 MNL (50/60 Hz) Product Overview and Call Quality Evaluation Training Program 700P01810 | Mar. 11, 1988 |
| TX4-010-350 | Xerox 1065/5065/5365 Service Manual | July 5, 1995 |
| TX1-126-873 | 1075 (50/60 Hz) Functional Documentation Blocks 4 & 5   600P85130 | Apr. 29, 1983 |
| TX1-408-055 | 1075 Functional Documentation, 600p87207 | Aug. 29, 1984 |
| TX1-937-151 | 1075 MNL (50/60 Hz) Functional Documentation 26FD207H | Oct. 23, 1986 |
| TX2-009-513 | 1075 MNL (50/60 Hz) Field Reference Manual 600P89658 | Feb. 9, 1987 |
| TX1-744-125 | 1090 MNL Functional Documentation 97FD645D | Jan. 23, 1986 |
| TX1-889-463 | 1090 MNL Functional Documentation 97FD645F | Aug. 19, 1986 |
| TX2-017-773 | 1090 MNL (50/60 Hz) Functional Documentation 97FD645G | Feb. 9, 1987 |

26.  By reproducing and/or distributing the Copied Manuals without Xerox's permission, CCS violated the exclusive rights granted to Xerox pursuant to 17 U.S.C. § 106.

27.  As a result of such infringement, Xerox has suffered and will continue to suffer irreparable injury to its business, including but not limited to loss of sales and profits that Xerox would have realized but for CCS's acts.  CCS's infringement of Xerox's registered copyrights will continue unless enjoined by this Court. Xerox has no adequate remedy at law.

***WHEREFORE***, Xerox demands judgment against CCS as follows:

1. Actual damages suffered by Xerox as a result of CCS's infringement of Xerox's patents, including lost profits and/or reasonable royalty fees;

2. Enhanced damages to Xerox of up to three times the amount of compensatory damages determined at trial as a result of CCS's willful infringement of Xerox's patents;

3. Actual damages suffered by Xerox as a result of CCS's infringement of Xerox's copyrights, including Xerox's lost profits and the profits of CCS that are attributable to its infringement, or, alternatively, statutory damages to the maximum extent permitted by 17 U.S.C. § 504 for each of Xerox's copyrighted works that CCS infringed;

4. The recovery of attorney's fees, as provided by 17 U.S.C. § 505;

5. The impoundment and destruction of all infringing Copied Manuals and a permanent injunction prohibiting CCS from reproducing or distributing manuals in violation of Xerox's copyrights;

6. Pre- and post-judgment interest;

7. Costs of suit; and

8. Any other relief the Court deems just.

## JURY DEMAND

Xerox respectfully demands trial by jury of all issues so triable.

Respectfully submitted,

| | |
|---|---|
| Robert P. Dolian (ct04278) | Jonathan I. Gleklen |
| CUMMINGS & LOCKWOOD | Christopher F. Winters |
| Four Stamford Plaza | Jon J. Nathan |
| 107 Elm Street | ARNOLD & PORTER |
| Stamford, Connecticut 06902 | 555 Twelfth Street, N.W. |
| (203) 351-4307 | Washington, D.C. 20004-1206 |
| fax: (203) 708-3948 | (202) 942-5000 |
| email: rdolian@cl-law.com | fax: (202)-942-5999 |
| | email: jonathan_gleklen@aporter.com |

2077678_1.doc 1/6/2005